UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ROBERTO COIN, INC.,

                            Plaintiff,            **REPORT AND RECOMMENDATION**

   -against-                                     18-CV-04045 (EK)(SLT)

JOSEPH GOLDSTEIN AND KINGS STONE US LTD.,

                            Defendants.
----------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

      Plaintiff Roberto Coin., Inc. ("Plaintiff" or "RCI") brought an action against Joseph Goldstein and Kings Stone US Ltd. ("Defendants") alleging various claims, including trademark infringement and unfair competition. The Honorable Eric R. Komitee granted Plaintiff's Motion for Summary Judgment on the trademark infringement and unfair competition claims. Now before the Court is Plaintiff's Motion for Damages ("Motion") on the trademark infringement and unfair competition claims, which were bifurcated from Plaintiff's other claims.

      The Honorable Eric R. Komitee referred Plaintiff's Motion to the undersigned to issue a Report and Recommendation.

      For the below stated reasons, this Court respectfully recommends that Plaintiff be awarded $477,760 in monetary damages, treble damages, $93,783.60 in attorneys' fees and injunctive relief permanently enjoining Defendants from exploiting RCI's Trademarks.

**I.     BACKGROUND**

      Plaintiff filed a Statement of Materials Facts under Local Rule 56.1 in support of its Motion for Summary Judgment. *See* ECF 142. However, neither Defendant filed the required counterstatement. Hence, the following facts are drawn from Plaintiff's uncontested Rule 56.1 Statement, and this Court's own review of the evidentiary record given Defendants' pro se status.

1

A.  Facts

1. RCI's Reputation in Jewelry Industry

Plaintiff RCI was established in 1995. For over forty years, Plaintiff's parent company has become known globally as a creator and innovator of a wide range of unique jewelry items. *See* Pl. R. 56.1 Statement at ¶ 1, ECF 142; Decl. of Peter Webster, dated February 6, 2020 ("Webster Decl.") at ¶ 3, ECF 138-1. Plaintiff sells its jewelry products across forty-nine states, and Canada, the Caribbean, Mexico and Central America. *Id.* In fact, Plaintiff is the exclusive North America licensee for Roberto Coin jewelry sales. *Id.* Plaintiff's jewelry is also often seen on red carpets and frequently used by famous movie stars and celebrities. Webster Decl. at ¶ 4.

Plaintiff's reputation in the jewelry industry is that its products are "crafted from the finest materials to ensure a flawless end product." *Id.* at ¶ 5. Given this strong reputation, Plaintiff's customer agreements include high-end retailers such as Neiman Marcus, Saks Fifth Avenue, Bloomingdale's, Borsheims, and boutique jewelers nationwide. *Id.* at ¶ 6.

2. Defendants Use RCI's Trademarks in Their Marketing Materials Without RCI's Consent

Plaintiff is the exclusive licensee of two federally registered trademarks for use on jewelry: (i) "RC♦" (United States Patent & Trademark Office ("USPTO") registration number 3402186) for use on jewelry, issued on March 25, 2008; and (ii) "ROBERTO COIN" (USPTO registration number 4840443) for use on jewelry, issued on October 27, 2015 (jointly, the "RCI Trademarks"). *Id.* at ¶ 8.

Beginning in or about May 2013, jewelry manufacturer CKC placed significant orders for black jade with Defendant Kings Stone[1], which CKC would manufacture and RCI would sell. Pl. R. 56.1 Statement at ¶ 13, ECF 142; *see also* Mot. at 3. Within months of agreeing to supply black

---

[1] Defendant Goldstein is the Corporate Representative for Defendant Kings Stone. *See* Pollack Decl., Ex. 15 [Kings Stone Dep.], ECF 138-36.

jade, Defendant Kings Stone fell behind in its deliveries. *Id.* at ¶ 15. Additionally, much of the black jade Defendant Kings Stone delivered did not meet requirements for both quality of materials and cutting and was therefore rejected. *Id.* at ¶ 16. Thus, CKC changed suppliers by mid-2014. *Id.* at ¶ 17.

In late 2015, after Defendant Kings Stone stopped supplying to CKC, Roberto Coin, S.p.A. learned that Defendants were unlawfully using copyright protected photographs of jewelry bearing the RCI Trademarks to promote and market Defendants' goods on Defendant Kings Stone's Instagram feed. Webster Decl. at ¶ 9, Ex. 5 [Instagram Posts], ECF 138-5; Declaration of Gayle Pollack, dated February 7, 2020 ("Pollack Decl."), ECF 138-21, Ex. 8 [Goldstein Dep.] at 133:18-20, 372:23-373:6, ECF 138-29. Defendants conceded that they sent out marketing materials bearing RCI images "to various venders that [they] tried to promote for business," though Defendants did not maintain emails or other records showing the exact volume of the communications. Pollack Decl, Ex. 8 [Goldstein Dep.] at 132:25-134:10, ECF 138-29; Ex. 15 [Kings Stone Dep.] at 221:3-6, 222:6-18, ECF 138-36.

When Plaintiff discovered Defendants' infringing Instagram feed in late 2015, Plaintiff's counsel demanded that Defendants remove the infringing materials. Webster Decl. at ¶ 10. Defendants refused to do so and claimed that Defendant Kings Stone had "copyrighted" the stone shapes for stones sold to RCI. However, Defendants did not provide any documentation for the alleged copyright. *Id.* Defendants also claimed that they had an unlimited license to use the RCI Trademarks, but Defendants never produced any such license. *Id.* Importantly, RCI never granted permission for Defendants to use RCI Trademarks in their advertising materials. *Id.*

3

3. Defendant Goldstein's Other Conduct Relevant to this Litigation

    *a. Defendant Goldstein Claims That RCI Has Bribed the GIA*

In December 2018, Defendants sent over 100 emails to third parties, including one RCI retailer and several international trade organizations, claiming that RCI's actions regarding this lawsuit were "eerily similar to the GIA certificate scandal." Webster Decl. at ¶ 19, ECF 138-1; Pl. R. 56.1 Statement at ¶¶ 80-83. ECF 142. The 'GIA Certificate Scandal" references a situation where the Gemological Institute of America (the "GIA"), a preeminent gemological testing laboratory, was investigated by federal authorities for criminal activity and sued by a jewelry purchaser for allegedly taking bribes in exchange for upgrading reports on diamonds. Pl. R. 56.1 Statement at ¶ 83, ECF 142. Allegations of bribing gemological laboratories to certify counterfeit gemstones is devastating for any jeweler given the importance of reputation in the industry. *Id.* at ¶ 84.[2]

Defendant Goldstein subsequently sent more emails to additional jewelry industry participants and wrote: "FEDERAL COURT NY ROBERTO FRAUD CASE IN THE NEWS." Webster Decl. at ¶ 21. Moreover, Defendant Goldstein sent emails to the parent companies of RCI retail customers, such as Bloomingdale's and Saks Fifth Avenue, falsely stating: "[n]otice pending criminal action against Roberto coin in Italy filed today in US federal court eastern district [sic]," even though there has never been any "pending criminal action" against Roberto Coin. *Id.* at ¶ 22.

    *b. Defendant Goldstein Discloses RCI's Confidential Settlement Statement to a Reporter.*

On December 20, 2018, this Court held a settlement conference. Per this Court's rules, the parties exchanged confidential settlement position statements in advance on December 6, 2018.

---

[2] The record further shows that: "even though RCI has worked with its retailers for years and has close relationships with them, two retailers immediately pulled the black jade collection from sale based solely on Defendants' unsupported and false allegations." Webster Decl. at ¶ 20.

4

Pl. R. 56.1 Statement at ¶ 101, ECF 142. Hence, Plaintiff's settlement position was marked "SETTLEMENT COMMUNICATION; PRIVILEGED AND CONFIDENTIAL." *Id.* at ¶ 102. Yet, on December 26, 2018, Defendant Goldstein emailed RCI's confidential settlement position to Leah Meirovich, a reporter for Diamonds.net, which is owned by the jewelry industry publication Rappaport. *Id.* Notably, Defendant Goldstein admitted in his cover email to Ms. Meirovich that he knew the document he sent was to "be kept confidential." *Id.* at ¶ 103.

      *c. Defendant Goldstein Sends Roberto Coin's Wife a Threatening Religious Hex*

On March 29, 2019, after this Court previously cautioned Defendant Goldstein about emailing RCI business partners, *see* Pollack Damages Submission Decl., Ex. 5 [Motion Hearing on March 18, 2019] at 18:22-24; 19:2-3; 20:9-17, ECF 177-6, Defendant Goldstein emailed Mr. Coin's wife, with the subject line "My Rabbi said." *See* Pollack Damages Submission Decl. at ¶ 14, ECF 177-1. The emails show a picture of a Rabbi with a caption written in Yiddish. The email is traditionally understood to convey some sort of "hex" and the Yiddish literally translates to, "Either you are bowing down or laying down." *Id.*

      *d. Defendant Goldstein Analogizes Protecting His Business to Protecting His Family*

During Defendant Goldstein's deposition, Plaintiff's counsel asked Defendant Goldstein whether he felt it was appropriate to lie or take illegal action to protect his business. Defendant Goldstein analogized this case to protecting his own family, and even referenced Plaintiff counsel's children by stating: "Think what you would do for your own child if somebody would harm your child." Pollack Decl., Ex. 8 [Goldstein Dep.] at 291:22-23, ECF 138-29.

      *e. Defendant Goldstein Has Threatened Other Members of the Jewelry Industry with Litigation Including Luxury Jeweler Tiffany*

In the spring of 2018, Defendant Goldstein accused luxury jeweler Tiffany of misrepresenting the stone in its jewelry as black jade and threatened to file a "New York state

5

consumer Complaint." Pollack Decl., Ex. 40 at TIFF_0000049, ECF 138-61. Notably, Defendant Goldstein offered to drop the matter if Tiffany would purchase jade from Defendant Kings Stone and stated, "If we start doing business together, then this is all over." *Id.* at TIFF_0000045.[3]

## B. Procedural History

On July 13, 2018, Plaintiff filed a complaint against Defendants alleging, *inter alia*, violations of the Lanham Act, 15 U.S.C. §§ 1125 and 1114, for unfair competition, and trademark infringement and pendent state law claims. ECF 1.

On August 20, 2018, Defendants filed their Answer. ECF 15. Defendant Kings Stone (but not Defendant Goldstein himself) filed counterclaims against Plaintiff for deceptive advertising under the Lanham Act, tortious interference with business relationships, unfair competition, and deceptive acts and practices under New York General Business Law Sections 349 and 350. *Id.* at ¶¶ 62-90. Defendant Kings Stone also named Roberto Coin (the individual) as a third-party defendant, alleging the same claims against him personally. *Id.* at ¶ 7.[4]

In October 25, 2019, just before the close of discovery in this action, Defendants filed a separate Summons with Notice in the New York State Supreme Court, naming RCI retail customers, RCI's president, and even Roberto Coin's wife as parties. Pollack Decl. at ¶¶ 11-12. Notably, when RCI demanded the complaint, Defendants withdrew the Supreme Court action. *Id.*

On February 7, 2020, Plaintiff moved for summary judgment ("Summary Judgment Motion") against all of Defendants' claims in the present action. ECF 138.[5] On September 30,

---

[3] The record also shows that Defendant Goldstein has threatened lawsuits against at least four other prior business partners in the jewelry industry, including: (1) Mr. Lek Sae-Ho, a stonecutter from Thailand; (2) stonecutter Thomas Gay of Rough & Gems Co. Ltd.; (3) stonecutter Bernd Stephan; and (4) a Chinese supplier. *See* Pollack Decl. at ¶¶ 14-16, 18. *See also* Mot. at 8-10.
[4] Defendant Goldstein has also sought reassurance that Defendant Kings Stone could bring claims against parties not named in this case. Pollack Decl. at ¶ 26 & Ex. 28, ECF 138-21.
[5] While the ECF entry is dated April 29, 2020, the Motion itself is dated February 7, 2020.

6

2021, the Court granted summary judgment on the trademark infringement and unfair competition claims. ECF 151 ("Summary Judgment Decision") at 35-44, 50.

On March 3, 2022, the Court issued an order bifurcating "the question of damages" on the federal and state trademark infringement and unfair competition claims and referred the case to this Court for a Report and Recommendation. ECF 163 at 1, 3.

On June 27, 2022, Plaintiff filed its Motion for Damages, which Defendants did not oppose. ECF 177-78.[6]  Instead, on July 26, 2022, Defendant Goldstein filed a letter with the District Court indicating that he has "run out of financial resources to comply with the [Opposition] deadline set by Judge Tiscione of July 27" and requested that the Honorable Eric R. Komitte "serve as the referee in chamber[s] for both parties." ECF 175. The District Court denied Defendant Goldstein's request on August 1, 2022. *See* ECF Minute Entry, dated August 1, 2022.[7]

## II.     JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States), 15 U.S.C. § 1121(a) (action arising under the Lanham Act), and 28 U.S.C. § 1367 (supplemental jurisdiction).

## III.    LEGAL STANDARD

Given that the District Court has granted summary judgment on Plaintiff's trademark infringement and unfair competition claims, 15 U.S.C. § 1117 provides the available recovery under the Lanham Act. A prevailing plaintiff may recover actual damages under the Lanham Act for: "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). "In assessing damages the court may enter judgment, according to

---

[6] While the ECF entries are dated July 28, 2022, the Motion itself is dated June 27, 2022.
[7] Note, Defendant Goldstein also filed an additional letter on July 26, 2022 requesting leave to file a Motion for Reconsideration of the District Court's Summary Judgment Decision. The District Court denied Plaintiff's request on August 1, 2022. *See* Minute Entry dated August 1, 2022.

7

the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." *Id.* Additionally, 15 U.S.C. § 1117(a) also allows the Court to award "reasonable attorney fees" fees in "exceptional cases." *Id.* Finally, the Lanham Act also allows the Court to award permanent injunctive relief. 15 U.S.C. § 1116. *See also Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 264-65 (2d Cir. 2014) (listing damages available to prevailing plaintiff and affirming award of both monetary damages and injunctive relief under Lanham Act).

## IV.  DISCUSSION

### A. This Court Recommends Awarding Plaintiff Damages Calculated as the Fee Defendants Should Have Paid to License Plaintiff's Trademarks for a Standard Five-Year Jewelry Term.

Plaintiff seeks monetary damages calculated as the fee Defendants should have paid to license Plaintiff's Trademarks for a standard five-year jewelry collection term. *See* Mot. at 12, ECF 178. After reviewing the record, this Court notes that "Defendants did not produce documents showing how broadly they exploited the RCI Trademarks. . ." *Id.* at 12. Given Defendants' failure to produce such documents, plus Plaintiff's expert evidence submitted with its damages Motion, this Court concludes that it is appropriate to calculate the license fee that Defendants should have paid to use the RCI Trademarks. *See Microban Prod. Co. v. Iskin Inc.*, No. 14CV05980 (RA) (DF), 2016 WL 4411349, at *5 (S.D.N.Y. Feb. 23, 2016), *report and recommendation adopted*, No. 14-CV-05980 (RA), 2016 WL 4411414 (S.D.N.Y. Aug. 18, 2016) ("[P]laintiff may also show actual damages based on the loss of reasonable royalty payments to which it would have been entitled, had it been able to reap the benefit of the legal exploitation of its intellectual property

8

rights."); *see also Gucci Am., Inc. v. Guess?, Inc.*, 858 F. Supp. 2d 250, 253-54 (S.D.N.Y. 2012) ("A plaintiff in a trademark action may recover a 'reasonable royalty' under the heading of actual damages.").

Here, Plaintiff's economic damages expert, Alisa Knapp ("Ms. Knapp"), analyzed the range of license fees Plaintiff would have charged. *See* Decl. of Alisa Knapp, ECF 180. Notably, Defendant Goldstein alleges that he provided a discounted purchase price of black jade in exchange for the ability to use Roberto Coin's name and trademarks in Kings Stone's marketing and that "effectively [Defendants] *will be paying for the advertising* [the benefit to Kings Stone of using RCI's name] by giving [Plaintiff] a discount." *Id.* at ¶ 29 (emphasis added). Hence, this Court agrees that Defendant Goldstein believed he was entering into a licensing agreement, thereby making a license fee analysis appropriate here.

Ms. Knapp examined Plaintiff's standard advertising agreements with its retailers, which showed that each retailer is encouraged to set an advertising budget of 10% of its purchase from Plaintiff. The retailer funds half the budget (5% of the buy) and Plaintiff funds the other half. *Id.* at ¶ 32. Applying this framework, Ms. Knapp calculated that "[i]n 2013 and 2014, [Plaintiff's] U.S. sales were equal to $665,400 and $1,304,410 respectively, for aggregate sales of $1,969,810." *Id.* at ¶ 35. During this two-year period, Plaintiff's annual sales averaged $984,905. *Id.* Per Plaintiff's standard co-advertising agreements, Plaintiff and Defendants should have each contributed five percent of the total sales towards advertising, which equals $49,245 per year on average. *Id.* Multiplying the 5% figure of $49,245 by five years, Ms. Knapp concludes that the license agreement would total $246,226.[8] *Id.* at ¶ 36; Schedule 1.0 to Declaration of Alisa Knapp,

---

[8] Note, while $49,245 times 5 years, equals $246,225, Ms. Knapp's expert report indicates that all figures are subject to rounding. When reviewing the calculations in Schedule 1.0 of the expert report, this Court agrees that $246,226 is the correct total after all figures are rounded appropriately.

9

ECF 180-1 at 2.

The wrinkle to the above is that Plaintiff also argues that Defendants' actions in this case hindered Plaintiff's actual sales from what they should have been and, therefore, Plaintiff's monetary damages should be increased. Specifically, Plaintiff argues that its sales were negatively impacted from "Kings Stone's inability to provide gemstones and Goldstein's disparaging the black jade collection impeded the launch and market uptake of the collection." *See* Mot. at 13. To address this impact, Ms. Knapp examined actual sales of three analogous jewelry collections from Plaintiff sold at similar price points to the black jade collection. *See* Decl. of Alisa Knapp at ¶¶ 37-38, ECF 180. Based upon this comparison, Ms. Knapp concluded that Defendants should have contributed an estimated five percent of $1,911,040, which equates to $95,552 a year and $477,760 for five years. *Id.* at ¶¶ 38-39; Schedules 1.1 to Declaration of Alisa Knapp, ECF 180-1 at 3.

Per the above calculations, this Court concludes that $477,760 is reasonable and recommends an award in that amount.[9]

### B. This Court Recommends Treble Damages Because This Court Concludes That Defendants' Infringing Conduct Was Willful.

This Court also recommends trebling the monetary damages to serve as a deterrent based upon Defendants' willful conduct to date, and the fact that Plaintiff's reputational harm is difficult to calculate. *See* Mot. at 17.

15 U.S.C. § 1117(a)-(b) allows this Court to recommend treble damages for reputational harm where Defendants have acted willfully. *See, e.g.*, *Merck Eprova AG v. Brookstone Pharms., LLC*, 920 F. Supp. 2d 404, 431 (S.D.N.Y. 2013) (trebling damages where intangible benefits were "not fully reflected in a calculation of [Plaintiff's] damages," plus the "need to deter [Defendant]

---

[9] Because this Court recommends an award of monetary damages based upon a license fee calculation, there is no need for this Court to conduct a statutory damages analysis under the Lanham Act.

10

from engaging in such willful violations in the future"); *Chanel, Inc. v. Veronique Idea Corp.*, 795 F. Supp. 2d 262, 271 (S.D.N.Y. 2011) (awarding tremble damages where "no rational jury could fail to find that Defendants intentionally purchased and sold jewelry products" with trademark at issue); *Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1025-26 (S.D.N.Y. 1994) (trebling damages to compensate for loss of goodwill and as future deterrent); *Study Logic, LLC v. Clear Net Plus, Inc.*, No. 11 CV 4343 CLP, 2012 WL 4329349, at *15 (E.D.N.Y. Sept. 21, 2012) (trebling damages "where defendants have no apparent justification for their conduct and have clearly profited from their willful and intentional infringement.").

As discussed *supra*, Defendant Goldstein analogized protecting his business to protecting his children, thereby strongly implying he would do *anything* to prevail in this litigation. Recall, Defendant Goldstein stated to Plaintiff's counsel during his deposition: "Think what you would do for your own child if somebody would harm your child." Pollack Decl., Ex. 8 [Goldstein Dep.] at 291:22-23, ECF 138-29; *see also* Mot. at 10-11. Additionally, Defendant Goldstein has willingly disclosed confidential settlement discussions, threatened multiple business partners and high-end jewelers with litigation, and has attempted to intimidate Roberto Coin's wife by sending an email containing a religious hex, as discussed *supra*. Therefore, this Court recommends awarding treble damages to deter such willful conduct.

### C. This Court Recommends Awarding Plaintiff Reasonable Attorneys' Fees and Costs.

This Court also recommends awarding Plaintiff reasonable attorneys' fees under 15 U.S.C. § 1117(a) because this is an "exceptional case" due to Defendants' willful conduct. When awarding attorneys' fees and costs under the Lanham Act, the Second Circuit has adopted the Supreme Court's test in the Patent Act context discussed in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014) to decide what constitutes an "exceptional case." *Sleepy's*

11

*LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530-31 (2d Cir. 2018). An "exceptional case" is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id* at 530. The Supreme Court has encouraged courts to evaluate the totality of the circumstances, considering a wide variety of factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (internal quotations and citations omitted). *See also Benihana of Tokyo, LLC v. Benihana Inc.*, 771 F. App'x 71, 72 (2d Cir. 2019) (affirming attorney fee award after considering totality of circumstances); *River Light V, L.P. v. Lin & J Int'l, Inc.*, No. 13CV3669 DLC, 2015 WL 3916271, at *10 (S.D.N.Y. June 25, 2015) (awarding attorneys' fees where "Defendants engaged in intentional infringement, perpetrated fraud and spoliation, pursued counterclaims grounded in that fraud. . .").

This Court concludes that Defendants' willful conduct here is "exceptional." As discussed *supra*, the District Court already determined there are no issues of material fact that Defendants infringed RCI Trademarks. Additionally, there is no factual dispute that Defendants falsely represented that they had an affiliation with Plaintiff by using the RCI trademarks on Defendants' Instagram feed and advertising platforms even after the parties' business relationship was terminated. Webster Decl. at ¶ 9, Ex. 5 [Instagram Posts], ECF 138-5; Pollack Decl., Ex. 8 [Goldstein Dep.] at 133:18-20, 372:23-373:6, ECF 138-29. Likewise, there is no dispute that Defendants sent over 100 emails to third parties, including one RCI retailer and several international trade organizations, claiming that RCI's actions regarding this lawsuit were "eerily similar to the GIA certificate scandal." Webster Decl. at ¶ 19; Pl. R. 56.1 Statement at ¶¶ 80-83.

12

Finally, in October 25, 2019, just before the close of discovery in this action, Defendants filed a separate Summons with Notice in the New York State Supreme Court, naming RCI retail customers, RCI's president, and even Roberto Coin's wife as parties. Pollack Decl. at ¶¶ 11-12. Yet, when RCI demanded the complaint, Defendants withdrew the New York Supreme Court action, strongly suggesting the State Court action was a baseless attempt to coerce a settlement. *Id* at ¶ 12. Thus, when considering Defendants' conduct to date under a totality of the circumstances analysis, this Court believes that attorneys' fees are appropriate.

Relatedly, this Court also agrees that Plaintiff's fee calculation of $93,783.60 is reasonable based upon Plaintiff counsel's invoices submitted and Plaintiff's method of calculation.[10] *See* Pollack Damages Submission Decl. Ex. 2 [invoices]*, ECF 177-3. Specifically, Plaintiff calculated that "twenty-nine out of one hundred and five paragraphs in the Complaint address the trademark infringement claims, and thus [Plaintiff] proposes to multiply its billings by 27.6% (i.e., twenty-nine divided by one hundred and five)." *See* Mot. at 20.[11]

Plaintiff seeks attorney's fees for three categories of work billed: (i) time preparing and/or drafting its Complaint; (ii) time preparing for and taking Defendants' depositions; and (iii) time preparing for and drafting summary judgment papers. *Id.* Plaintiff's counsel calculated that it spent $339,795.64 on these three categories. *Id.* Therefore, $339,795.64 x .276 equals $93,783.60 and the Court recommends attorneys' fees and costs for that amount.[12]

---

[10] The Court notes that while Plaintiff's invoices are redacted for privilege, they contain sufficient information to substantiate Plaintiff's damages calculations.

[11] The Court notes that while Plaintiff did not specify which twenty-nine paragraphs it is relying on, a review of the Complaint shows that at least 29 paragraphs pertain to trademark infringement.

[12] This Court also agrees that Plaintiff's "billing rates are significantly lower than the rates charged by firms at the top market." *See* Mot. at 21. This Court further recognizes that Justice Schechter of the New York State Supreme Court awarded Plaintiff's counsel, Morrison Cohen, fees calculated at its hourly rates on February 3, 2021. *See* Pollack Damages Submission Decl. Ex. 1*, ECF 177-2.

### D. This Court Recommends Permanently Enjoining Defendants.

In addition to monetary damages, this Court also recommends permanently enjoining Defendants from similar future conduct. To obtain a permanent injunction, Plaintiff must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Streamlight, Inc. v. Gindi*, No. 18-CV-987 (NG), 2019 WL 6733022, at *8 (E.D.N.Y. Oct. 1, 2019), *report and recommendation adopted*, No. 18-CV-987 (NG) (RLM), 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019) (internal quotations and citations omitted). Irreparable injury is established when Plaintiff shows that the "failure to issue a preliminary injunction would actually cause irreparable harm." *Id.* (internal citations and alterations omitted).

Permanent injunctions are appropriate in Lanham Act cases specifically. *Id.*; *see also e.g.*, *Cengage Learning, Inc. v. Doe 1*, No. 18-CV-403(RJS), 2018 WL 3549877, at *2 (S.D.N.Y. May 11, 2018) (issuing permanent injunction ordered in connection with a default judgment enjoining defendants from using "any computer server, website, email address, social media account, online-marketplace account, bank account, or payment processing system" in advertising or promoting works infringing upon the trademarks in question); *Cap. One Fin. Corp., Plaintiff, v. Cap. One Auto Grp. 1 Inc.*, No. 19CV7201ENVRER, 2022 WL 683647, at *7 (E.D.N.Y. Mar. 4, 2022) (issuing permanent injunction prohibiting defendants from, among other things, "[r]epresenting, by any means whatsoever, directly or indirectly, that Defendants, their services, and/or their activities originate from, are sponsored by, or are associated, affiliated, or connected with Capital One in any way. . .").

The Court concludes that Plaintiff will be irreparably harmed if the Court does not recommend a permanent injunction. As discussed *supra*, the record shows that reputation is crucial in the jewelry industry. *See* Webster Decl. at ¶ 20, ECF 138-1. Specifically, "[a] false advertisement that RCI is bribing gemological laboratories to certify counterfeit gemstones is particularly shattering for a jeweler like RCI, whose success is based on its reputation for integrity and quality." *Id*. The record further shows that: "even though RCI has worked with its retailers for years and has close relationships with them, two retailers immediately pulled the black jade collection from sale based solely on Defendants' unsupported and false allegations." *Id*. Defendants' accusations of criminal bribery and exploitation of Plaintiff's trademarks are consistent with Defendants' business conduct in the jewelry industry to date and show no sign of change.

Based upon the above, this Court also believes that quantifiable monetary damages alone do not suffice. *See Towers Fin. Corp. v. Dun & Bradstreet, Inc.*, 803 F. Supp. 820, 822 (S.D.N.Y. 1992) (finding publication of false information about business could cause irreparable harm to plaintiff's "reputation among customers and potential customers"); *see also Kaisha v. Wholesale*, No. 17-CV-9419 (ALC), 2018 WL 11226749, at *5 (S.D.N.Y. Sept. 28, 2018) (granting permanent injunction because continued infringement "may adversely affect Plaintiffs' business dealings and future negotiations in ways that may be difficult to quantify").

Finally, the balance of hardships and public interest factors also favor imposing the permanent injunction because Defendants are merely prohibited from unlawfully using the RCI Trademarks without Plaintiff's permission. Furthermore, the injunction helps ensure that the public receives accurate information that Plaintiff is not affiliated with Defendants' products. *See Est. of Ellington ex rel. Ellington v. Harbrew Imports Ltd.*, 812 F. Supp. 2d 186, 196–97 (E.D.N.Y.

2011) (awarding permanent injunction where "any harm to Defendants would not outweigh the irreparable harm and damage to Plaintiff should they continue to disobey the law…" and "the public interest would benefit from the injunction because it would protect the public from deception."). Therefore, this Court recommends that the District Court permanently enjoin Defendants by issuing an injunction that adopts Plaintiff's proposed language in its Mot. at 24-25, as noted below:

> IT IS HEREBY ORDERED, that Defendants Joseph Goldstein and Kings Stone US LTD. (collectively, "Defendants"), their officers, members, directors, agents, employees, representatives, and all persons acting in concert or participation with them, are permanently enjoined and restrained from: (i) using, causing to be used, advertising, causing to be advertised, registering, applying to register, or challenging or causing to be challenged the marks and terms "RC♦" or "ROBERTO COIN" (jointly, the "RCI Trademarks") in connection with any marketing, promotional, or advertising materials, offer to sell, or sale of any jewelry, jewelry-related, gemstone, or gemstone-related products; (ii) representing or stating, by any means, whatsoever, directly or indirectly, that they, their services, their products, and/or their activities originate from, are licensed, sponsored, endorsed, approved, authorized by, or associated, affiliated, or otherwise connected with Roberto Coin, Inc. ("RCI") or Roberto Coin in any way; (iii) taking any action or making any statement, or causing any third party to take any action or make any statement, that does or could dilute, disparage or denigrate the distinctive quality or reputation of the RCI Trademarks or RCI, or cause unfavorable associations regarding the RCI Trademarks or RCI, including but not limited to stating, suggesting, or implying to RCI's or Defendants' current or prospective customers or business associates that any products affiliated with or promoted in connection with the RCI Trademarks are fake, non-authentic, not authenticated, or otherwise not genuine; (iv) knowingly aiding, abetting, contributing to, or otherwise assisting anyone in infringement of plaintiff's trademarks; or (v) effecting new assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing these prohibitions.

## V.    CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Plaintiff be awarded $477,760 in monetary damages, treble damages, $93,783.60 in attorneys' fees and injunctive relief permanently enjoining Defendants from exploiting RCI's Trademarks.

## VI. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

      /s/ Steven L. Tiscione
      Steven L. Tiscione
      United States Magistrate Judge
      Eastern District of New York

Dated: Central Islip, New York
February 21, 2023